UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TARA KNACK-MORENO & THOMAS CROWLEY,

    Plaintiffs,

vs.

SULLIVAN COUNTY COMMUNITY COLLEGE, JAMES MURPHY,

    Defendants.

------------------------------------------------x

**COMPLAINT**

JUDGE SEIBEL

09 CIV. 5976

By and through their counsel, Michael H. Sussman, plaintiffs complain of defendants as follows:

## I. PARTIES

1. Plaintiff Tara Knack-Moreno is a female resident of Sullivan County of legal age.

2. Plaintiff Thomas Crowley is a male resident of Sullivan County of legal age.

3. Defendant Sullivan County Community College [hereinafter "the college"] is a state-supported community college located in the County of Sullivan, within this judicial district.

4. Defendant James Murphy is a teacher in the nursing program, employed

Page -1-

by defendant college.

## II. JURISDICTION

5. As plaintiffs allege that defendants violated their rights as guaranteed by Titles VI of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000d, et seq. [hereinafter [Title VI] and Title IX of the Education Amendments of 1972, 20 U.S.C. sec. 1681, et seq. [hereinafter Title IX] by engaging in sex discrimination and retaliation, this Honorable Court has jurisdiction pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. sec. 1988.

## III. **FACTUAL ALLEGATIONS**

6. During the 2008-09 school year, plaintiffs were both nursing students at the college, Knack-Moreno in her first [and only required] year and Crowley in his second year.

7. Early in the 2008-09 school year, in reference to plaintiffs, defendant Murphy remarked to male students in the nursing program: "What's the matter with your boy? Tara leaves her husband and now she is dragging Tom around by his cock." It was initially further reported to Crowley that Murphy told the male students that "She is a dirty slut".

8. Prior to this, defendant Murphy made sexually inappropriate comments to the male students, including plaintiff Crowley.

9. For example, on one occasion, commenting about another female student, Murphy stated, "N in class has a giant set of knockers. Wow, they are huge, imagine sucking those bad boys."

10. After learning of it from another male student, plaintiff Crowley told Knack-Moreno of the comment set forth in paragraph 7, and, more generally, explained to her Murphy's proclivity for making comments which sexually objectified female nursing students.

11. The day after learning of these comments, plaintiff Knack-Moreno informed her clinical instructor, Karin Pantel, of these comments and explained that she felt violated and ashamed being so spoken about by a professor to her peers.

12. The same day, Pantel advised the college's Director of Nursing, Donna Belgard, of Murphy's comments as reported to her by Knack-Moreno.

13. Belgard did not then initiate a meeting or discussion with Murphy.

14. The following day, Belgard met with plaintiffs who told her that they feared that Murphy would retaliate against them if he learned that they had complained about his sexually-inappropriate comments.

15. Belgard assured plaintiffs that they would not suffer any form of retaliation or reprisal for reporting these comments.

16. With that, plaintiffs recounted Murphy's comments about Knack-Moreno and N, the other female student.

17. Belgard stated that it was inappropriate for Murphy to be talking that way to classmates and wanted the weekend to discuss and take care of the matter.

18. After meeting with the plaintiffs, Belgard met with Murphy, who, upon information and belief, admitted making the comments which had been reported.

19. However, despite this admission, defendant college took no disciplinary action against Murphy of any sort and, instead, for the second semester of the 2008-09 school year, assigned him to be lead instructor for the nursing students, the first time he had ever been given this responsibility.

20. In effect, defendant college promoted defendant Murphy after plaintiffs lodged their complaint, giving him more responsibility and authority over the students, including plaintiffs.

21. At the start of the second semester, the nursing students, including plaintiffs, had to perform skills competencies.

22. While three instructors performed such checking, each with different students, both plaintiffs were assigned to Murphy.

23. Defendant Murphy failed plaintiff Knack-Moreno and passed plaintiff Crowley after each performed the same skill in the same manner.

24. Acknowledging this, defendant Murphy told Crowley, "That's the same thing that Tara forgot to do yesterday but she failed because of it. Please don't tell her that I reminded you and let you pass because I don't want to get in any trouble."

25. Shortly after the semester began, Murphy posted the clinical rotations.

26. Though cognizant that Knack-Moreno has a "special needs" child and certain specific responsibilities for his care, Murphy placed her in the most geographically distant placement.

27. This clinical placement offered no advantages or special attributes.

28. When Knack-Moreno requested a transfer to a closer clinical rotation, Murphy adamantly refused and stated as follows: "Tara, life is fill of choices and if you can't make the choice to make clinical a priority, then maybe you should withdraw from the program. Maybe, it's just not your time."

29. Plaintiff Knack-Moreno entered the college's nursing program after having worked for two and one-half years as an LPN.

30. Plaintiff Knack-Moreno needed to complete just one year in the college's nursing program to receive her RN degree, something of singular importance to her.

31. The first semester, Knack-Moreno earned grades which placed her

Page -5-

second amongst the fifty nursing program students.

32. Plaintiff Knack-Moreno was a diligent and highly qualified student.

33. Told that this might not be "her time" to be in the nursing program, plaintiff Knack-Moreno became furious and told defendant Murphy that withdrawing was not an option, that she was a single mother and needed to finish the program that semester.

34. To this, Murphy responded, "Well then, I guess you have to figure something out."

35. Plaintiff Knack-Moreno then discussed this situation with Pantel who advised Belgard of it.

36. Plaintiff Knack-Moreno then met with Belgard who stated that she would talk to Murphy and work something out.

37. When Belgard spoke with him, defendant Murphy adamantly refused to move plaintiff Knack-Moreno to a closer rotation, but eventually told plaintiff that she could spend one day/week at a different clinical site

38. Murphy advised Knack-Moreno that this change was to commence immediately and that she need not go the next day [Tuesday] to the Bon Secours clinical site [the initial, more distant site] and that he would advise the clinical instructor at that site that she would not be present the following day.

39. Instead, Murphy failed to do this, advising that instructor that plaintiff would continue at that site on Tuesdays, but needed to leave early that day.

40. This advice directly contravened the agreement between plaintiff Knack Moreno and Murphy and caused the Bon Secours instructor to mark plaintiff absent for a clinical rotation.

41. Learning about Murphy's latest effort to sabotage and retaliate against her, Knack-Moreno again reported this to Belgard.

42. Belgard told plaintiff she would speak to Murphy and straighten the whole thing out.

43. Before Belgard could call him, Murphy contacted plaintiff and told her, "I will straighten this out; there is no need for you to tell anyone. I don't think we need a tribunal."

44. Plaintiff then advised Murphy that she had already told Belgard what he had done.

45. Murphy became incensed and yelled, "What do you mean you called Mrs. Belgard?," before harshly stating, "this situation will be handled."

46. During this first rotation, Murphy administered the first unit exam.

47. Knack-Moreno took the exam and calculated her grade.

Page -7-

48. When the grades were posted, hers was 10 points less than the score she had calculated she had earned.

49. In early March, plaintiff Knack-Moreno commenced a new clinical rotation in Middletown.

50. Shortly after this round began, plaintiff Knack-Moreno was called to deal with a school emergency involving her son. This forced her to call in and miss a clinical session.

51. Plaintiff Knack-Moreno heard nothing further about this for several weeks, indeed not until after spring break on Monday, March 23.

52. On that date, Murphy called plaintiff to the front of the class and told her that she had missed three clinical sessions and needed to meet with him and Belgard who he described as "livid" with her.

53. In so calculating, Murphy included the Bon Secours rotation day for which he had previously excused her.

54. Knack-Moreno explained to Pantel that she had NOT missed three clinical sessions and that Murphy, she feared, would finally succeed in getting her thrown out of the nursing program.

55. Pantel suggested that plaintiff Knack-Moreno speak with Belgard.

56. Belgard expressed no indignation with plaintiff and instead told her to

Page -8-

make up the clinical sessions she had missed.

57. Murphy then met alone with plaintiff and gave her a note chastising her falsely for missing three clinical sessions.

58. The following day, her current clinical instructor, Chigbundu, told plaintiff Knack-Moreno that Murphy had been asking her many questions specifically about her.

59. On March 25, 2009, the last day of her clinical rotation with her, Chigbundu told plaintiff that Murphy had repeatedly asked questions about her, was obviously trying to find something wrong plaintiff had done, that plaintiff better be careful to dot every "i" and cross every "t" and that plaintiff Crowley was also a target of Murphy and had better watch himself.

60. During the same conversation, Chigbundu also told plaintiff that she knew that Murphy was going to be their clinical instructor for the last rotation and that he was intending to get plaintiffs in trouble.

61. Upon hearing this account from Chigbundu, plaintiff advised the college ombudsman of all of the issues with Murphy.

62. She also identified other students who could bear witness to the sexually inappropriate comments and behavior of Murphy and his grade tampering.

63. The college refused to take any action against Murphy for his behavior.

Page -9-

64. The college left Murphy in a position of power and authority over plaintiffs.

65. The complaint mechanism the college made available under Title IX was entirely ineffectual.

66. After plaintiffs recounted what had occurred to the college, Murphy altered plaintiff Crowley's grades, causing him to withdraw from the final nursing course he needed to graduate.

67. Thereafter, citing written college policy, Crowley sought to re-enroll for the 2009-10 school year in the nursing program.

68. Acting on behalf of the college, Belgard rejected Crowley's application to re-enroll in the program for the 2009-10 school year.

69. By dint of the conduct set forth above, defendant Murphy subjected plaintiff Knack-Moreno s to a hostile school environment on account of her sex and Crowley to retaliation after he learned that this plaintiff had corroborated co-plaintiff's account and supported her sexual discrimination and harassment claims.

70. By dint of the conduct set forth above, defendants have caused plaintiffs to experience humiliation, embarrassment with their peers, anxiety and stress.

71. By dint of his retaliatory conduct, condoned by his co-defendant college, Murphy succeeded in causing Crowley to withdraw from the nursing

Page -10-

program, with significant adverse economic and personal consequences.

72. The above-enumerated actions of Murphy were intentional, malicious, discriminatory and retaliatory.

73. The above-enumerated actions of the college, acting through the administrator of the nursing program, was reckless and grossly negligent and blatantly violated the college's own anti-harassment and anti-retaliation policies.

## IV. **CAUSES OF ACTION**

Plaintiffs incorporate paras. 1-73 as if re-written herein.

74. By engaging in sexually harassing conduct against plaintiff Knack-Moreno, defendant Murphy violated her rights under Title VI and Title IX.

75. By engaging in retaliatory conduct against both plaintiffs, defendant Murphy violated their rights under Titles VI and Title IX.

76. By condoning the sexual harassment in which its agent, Murphy, engaged and failing to discipline him and allowing him to continue in his position of authority over plaintiffs, defendant college violated Titles VI and IX and facilitated the retaliation of which plaintiffs complain.

## V. **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray that this Honorable Court accepts jurisdiction over this matter, empanel a jury to hear and decide the matter, award compensa-

tory damages to plaintiffs and against defendants jointly and severally, award punitive damages against Murphy for his blatant and unconscionable violation of plaintiffs' statutory rights, award plaintiffs the fees and costs of this action, order defendant college to reinstate Crowley to the nursing program, enjoin defendants from retaliating against plaintiffs in any form and order any other relief which the interests of law and equity require.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO Box 1005
Goshen, NY 10924
(845)-294-3991

Counsel for Plaintiffs

Dated: June 22, 2009